In The United States District Court

For The Middle District Of Georgia

Macon Division

CLERK'S OFFICE

2015 SEP -3  AM 8:35

U.S. DISTRICT COURT
MIDDLE DIST. OF GEORGIA
MACON, GEORGIA

David D. Cassady,

Plaintiff,

V.

Steven D. Hall;

Carl Humphrey;

Keith Eutsey; and

Beverly Dorsey, in

their individual Capacities,

Defendants.

Civil Action No.

5:14-CV-0025-MTT-MSH

Jury Trial Demanded

## Plaintiff's Second Amended Complaint

## I. Jurisdiction:

1. Plaintiff Files this Amended Complaint under Federal Rule of Civil Procedure 15(A) to correct defects made in the original complaint. Plaintiff brings this lawsuit pursuant to 42 U.S.C. / 1983. This Court has jurisdiction under 28 U.S.C. / 1331 and 1343(A), (3). This Court Also has Supplemental jurisdiction over plaintiff's state-law Claims pursuant to 28 U.S.C. / 1367.

## II. Venue:

2. The middle District of Georgia is an appropriate venue under 28 U.S.C. / 1391(b),(2) because a substantial part of the

-1-

events or omissions giving rise to the claims occurred in this District.

## III. Parties:

3. Plaintiff David D. Cassady, was at all times relevant to this Action a prisoner incarcerated at the Georgia Diagnostic and Classification Prison, which is located in the Middle District of Georgia.

4. Defendant Steven D. Hall, was at all times relevant to this Action, a Correctional Officer at the Georgia Diagnostic and Classification Prison and was acting under color of state law. He was the mental health, level three, D-house unit Officer and was responsible to ensure the safety of prisoners placed in D-house. He is sued in his individual capacity, and can be served at: Georgia State Prison, 300 1st Avenue South, Reidsville, Georgia 30453.

5. Defendant Carl Humphrey was, at all times relevant to this Action, Warden of the Georgia Diagnostic and Classification Prison and was acting under color of state law. By statute the Warden is responsible for managing the prisons day-to-day operations and ensuring the safety and well-being of prisoners under his supervision. He is sued in his individual capacity and can be served at his place of employment: Spalding County Correctional Institution, 295 Justice Boulevard, Griffin, Georgia 30224.

6. Defendant Keith Eutsey was, at all times relevant to this Action, Deputy Warden of Security of the Georgia Diagnostic

and Classification Prison, and was Acting under color of state law. As Deputy Warden of the prison, Defendant manages subordinates, and executes it's policies. He is sued in his individual capacity and can be served at his place of employment: Georgia Diagnostic and Classification prison, 2978 Hwy. 36, West, Jackson, Georgia 30233.

7. Defendant Beverly Dorsey was, at all times relevant to this action, Director of Mental Health of the Georgia Diagnostic and Classification Prison and was Acting under color of state law. As Director of mental health, Defendant was responsible for executing its policies and for providing adequate treatment to psychiatric, level three patients, who require both placement in a special living unit and access to mental health treatment that gives them a realistic opportunity to be cured and released. She is sued in her individual capacity, and can be served at her place of employment: Georgia Department of Corrections State Offices, 300 Patrol Road, Forsyth, Georgia 31029.

## IV. Exhaustion of Administrative Remedies:

8. Plaintiff exhausted his administrative remedies as required by the Prison Litigation Reform Act and prison policy. Plaintiff Filed two grievances, relating to the matters stated in this complaint. The First on October 19th, 2010, and the second July 19th, 2013. The sexual allegation grievance was investigated by Department of Corrections Internal Affairs investigator, Officer Patrick Wolfe on October 31st, 2013.

9. Plaintiff has exhausted all administrative remedies available to him.

## V. Factual Allegations:

10. On September 11, 2009, in a preceding case, CV-4:08-250, S.D. GA. Doc. 37 and 40, an injunction was issued, ordering plaintiff be provided with a "Smoke Free Accommodation".

11. In May 2010, in response to a contempt motion, plaintiff was involuntarily transferred to the Georgia Diagnostic and Classification Prison and placed in D-house, a mental health level three supportive living unit.

12. On June 14, 2010, plaintiff forwarded the Southern District Court, Savannah Division, via his attorney John R. Monroe, empty cartons of cigarettes and declarations in support of his contention that defendant Hall and other staff members were regulary smoking inside D-house.

13. Approximately, late August, early September 2010, defendant Hall denied bringing cigarettes or smoking inside the prison through an affidavit provided by Deputy Warden Johnson to the State Attorney General's Office.

14. On or about October 15, 2010, defendant Hall, the only assigned officer to D-house in violation of prison policies, instructed plaintiff to clean up the utility chase corridor in D-house. Both the plaintiff and defendant Hall entered through a yellow door on range

three and Four.

15. Once Defendant Hall and plaintiff entered the Utility Chase Corridor, Defendant Hall locked the door behind them.

16. Defendant Hall ordered plaintiff to pick up trash from off the floor, and handed plaintiff a trash bag.

17. Plaintiff requested a pair of gloves. Defendant Hall walked over to where plaintiff was standing next to a set of stairs, but instead of handing plaintiff a pair of gloves, Defendant Hall instructed plaintiff to turn around and face the stairs.

18. Plaintiff complied without question. Defendant Hall pat searched plaintiff and then placed plaintiff's right hand in one cuff while looping the opposite cuff under the stair rail and then cuffed plaintiff's left hand. Thus, one hand was on top of the rail and the other on the underside, restraining plaintiff's movement.

19. Plaintiff asked Defendant Hall why he was being cuffed. Defendant Hall responded saying, "You know what the F--K is going on."

20. Defendant Hall then removed plaintiff's pants and drawers from his waistline by pushing them to the floor. Plaintiff became extremely nervous and trembled with fear, plaintiff stated, "No, please stop."

-5-

21. Defendant Hall placed his hand under plaintiff's shirt rubbing back and forth across plaintiff's chest while standing so close behind, plaintiff could smell cigarette smoke and alcohol on Defendant Hall's breath that was almost intoxicating.

22. Plaintiff begged Defendant Hall stating, "Please dont, I wont say anything if you'll stop."

23. While unbuckling his belt, unzipping his uniform pants and revealing his penis, Defendant Hall stated, "Sure you wont, just like you didnt tell on me for smoking".

24. Defendant Hall repeatedly pressed his erected penis against plaintiff's buttocks in a vibratory motion while pushing his body against plaintiff's. Plaintiff became agitated with fear, his mouth was dry, his hands and legs trembled.

25. Plaintiff told Defendant Hall, "I will do whatever you ask me, please dont hurt me". Defendant Hall said, "You are doing what I want you to do, now shut the F__K up".

26. Defendant Hall used both hands and pulled plaintiff's buttocks apart and placed his penis between them pushing, penetrating plaintiff's anus.

27. Plaintiff let out a piercing outcry of pain, begging defendant Hall to stop, that he was hurting plaintiff. Defendant Hall continued to forcibly thrust his penis violently into plaintiff's anus. No one heard plaintiff's cry.

28. Plaintiff begged Defendant Hall to stop. The pain was so intense. It felt like the skin around plaintiff's anus was being sliced open with a razor. Plaintiff twisted his cuffed hands trying to break free and tightened his buttocks in pain, which only intensified the repeated thrusting of Defendant Hall's penis into plaintiff's anus.

29. Once the sexual assault was over, lasting approximately five minutes. Plaintiff's body gave weak falling to the floor, hands and arms dangling from the rail above still hand cuffed.

30. Plaintiff had a large blood spot on his underwear and sperm that Defendant Hall discharged and tears on his face.

31. Defendant Hall revealed paper towels from his pants pocket, cleaned his penis off, revealing excrement and blood on the paper towels. Defendant Hall then pulled his pants up around his waist.

32. Defendant Hall told plaintiff to stand up, uncuffed plaintiff's hands, and ordered plaintiff to remove his underwear and place them into a trash bag. then get dressed. Plaintiff yielded to Defendant Hall's orders.

33. Defendant Hall threatened plaintiff saying, "Now tell on me again and see what the F__K happens to you". Defendant Hall continued, "If you tell anyone, just one

F__Ken person. I will come see you Again, do you understand?"
Plaintiff trembled with his response," Yes sir." Defendant Hall
then stated while shrugging his shoulders in A taunting gesture.
"It wouldn't F__Ken matter if you told, no one will believe you."

34. Defendant Hall handed plaintiff A paper towel and
instructed him to dry his Face and clean up the mess on
the Floor. Defendant Hall then had plaintiff place the soiled
paper towels used to clean the Floor, in the same trash
bag plaintiff's underwear was in, inwhich Defendant Hall held.

35. Defendant Hall then ordered plaintiff upon leaving the
utility Chase Corridor, to shower. Plaintiff complied with
his directive.

36. Plaintiff endured severe pain in his rectum throughout
the night due to the sexual Assault.

37. It was exceedingly painful for plaintiff to have A bowel
movement. It felt like plaintiff's intestine were coming out and
plaintiff would Find blood in the toilet.

38. For the Following three days, plaintiff kept toilet paper
rolled up into A ball, stuffed between his buttocks, pushed up
close to his Anus to keep blood from staining plaintiff's
underwear and pants.

39. Plaintiff tried to use the inmate phone in D-house to
contact the Prisoner Rape Elimination Act hotline, but was

unsuccessful, due to this phone being secured inside a locked box. This was confirmed during defendant Hall's deposition, taken on May 13, 2015.

40. On several occasions defendant Hall, loudly berated plaintiff to other officers, staff, and inmates, particularly plaintiff's cellmate, inmate Dixion stating," Cassady is a snitch, he is why we cant smoke".

41. Over the subsequent fourteen months, plaintiff underwent severe and repetitive sexual assaults at the hands of defendant Hall while living in D-house. In fact, each and every time defendant Hall was assigned to D-house, he was the only officer in the unit in violation of prison policies.

42. On or about mid October 2011, defendant Hall was reassigned to work another housing unit.

43. On October 30, 2011, plaintiff sent letters via prison mail service to defendant's Humphrey, Eutsey, and Dorsey.

44. On November 1, 2011, plaintiff sent letters via United States Postal service, registered return receipt to defendant's Humphrey and Eutsey, inquiring as to why each defendant had failed to effectively address and abate repeated oral and written complaints regarding plaintiff being sexually assaulted by defendant Hall, Plaintiff never received one response from any defendant.

45. In December 2011, plaintiff while working At his detail, had A personal conversation with defendant Humphrey, wherein plaintiff questioned defendant Humphrey About his repeated written complaints regarding defendant Hall sexually Assaulting plaintiff And why defendant Humphrey Failed to Act on such information to remedy the situation. Defendant Humphrey warned plaintiff by reminding him in 2009, defendant Humphrey had placed plaintiff on administrative segregation for complaints and grievances related to smoking violations At Baldwin state Prison.

46. On January 11, 2012, plaintiff spoke with defendant Dorsey in her Administrative Office. Plaintiff explained he had been Sexually Assaulted by defendant Hall And Asked defendant Dorsey to take steps to Avert plaintiffs serious issue. Defendant Dorsey claimed plaintiff was suffering From A Form of "Mental psychosis" And dismissed the conversation As such And did nothing.

47. On January 15, 2012, plaintiff spoke with defendant Eutsey when he was making rounds As Duty Office in D-house regarding plaintiff's letters sent on October 30, And November 1, 2011 to defendant Eutsey About defendant Hall sexually Assaulting plaintiff. Defendant Eutsey responded with, "Officer Hall is no longer working D-house, your Allegations were unsubstantiated and contested there is no need for me to get involved". When plaintiff questioned defendant Eutsey, defendant Eutsey intentionally ignored plaintiff And starting talking with Another inmate.

48. After Filing grievances, writing several letters and having repetitive personal conversations, plaintiff was the target of

harassment and retaliation from both Defendant Humphrey and Defendant Eutsey.

49. Defendant Humphrey in a well orchestrated, conspiratorially planned retaliation action, harassed plaintiff in retaliation for continued grievances and written letters against Defendant Hall.

50. For example, on February 2, 2012, plaintiff was placed on involuntary Administrative Segregation for an indefinite period without a disciplinary report, segregation hearing or any periodic reviews for two hundred and ten days in violation of prison policies.

51. This involuntary move was to a more vulnerable cell D-2-25, located on the top range next to the utility chase corridor yellow door in D-house as a direct order from Defendant Humphrey.

52. The mental health Administrative Segregation unit was unkept, unsanitary and unsuitable for anyone to live in. Defendant Humphrey intentionally placed plaintiff in D-2-25, a solitary cell located at the back of range two, were severe psychotic levels four and five inmates in observation cells below plaintiff continually screamed, beat on plexy glass, shook and banged on metal bars and toilets.

53. Plaintiff's neighbors laughed uncontrollably, flooded their cells, threw feces and urine on the range, and set fires to their cells, almost daily.

54. Plaintiff's Cell like All other Cells located in this mental health Segregation unit had an insect infestation of Cockroaches and rates, which crawled on plaintiff's body And the walls in plaintiff's Cell.

55. Because of plaintiff's illegal stint on Administrative Segregation, he was deprived the opportunity to interact with Other mental health inmates in daily treatment programs and Activities and have the basic required, meaningful contact with therapeutic Staff, in violation of prison policies. Resulting in Plaintiff's loss of sleep for days at a time, Serious depression, Anxiety, and Contemplation of suicide.

56. Similarly, on February 6, 2012, plaintiff spoke with Defendant Humphrey, Defendant Eutsey, and defendant Dorsey during inspection. Plaintiff questioned why he was moved involuntary to D-house Administrative Segregation when he had done nothing wrong.

57. Defendant Humphrey responded by stating, " I locked you down to shut you up and to keep you hid From everyone, I'm tired of your letters where you claim one of my officers Sexually Assaulted you, your grievances and hearing your name."

58. Plaintiff questioned how he could be kept on lockdown without A disciplinary report, or even A Segregation hearing by Classification.

59. Defendant Humphrey retorted by saying," You are not

getting out of that Cell until you learn not to File False Allegations on Officers, you will stay in that Cell until I retire".

60. In doing so, Defendant Humphrey used the precise language that plaintiff had used in his letters and grievances against Defendant Hall, thus emphasizing that he was acting in retaliation for the letters and grievance.

61. On March 19, 2012, plaintiff spoke with Defendant Eutsey during inspection in D-house, questioning how he could allow Defendant Hall to get away with sexually assaulting plaintiff and Defendant Humphrey Keeping plaintiff on lock down.

62. Defendant Eutsey's only response was, "Thats above my pay grade, Warden Humphrey put you on lock down due to your sexual assault allegations, its out of my hands."

63. On April 5, 2012, Defendant Hall was reassigned to D-house on a regular schedule.

64. On April 14, 2012, Defendant Hall, the only Officer assigned to D-house in violation of prison policies, opened plaintiff's Administrative Segregation Cell approximately 6:20 am and required plaintiff to go into the utility chase corridor.

65. Once inside, plaintiff was instructed to pull down his gym shorts and turn around. Plaintiff restrained, and Defendant Hall forcibly with his penis penetrated plaintiff's anus.

-13-

66. Plaintiff had a bowel movement and feces got on defendant Hall. Out of anger, defendant Hall pushed plaintiff from behind, causing plaintiff to hit the wall in front of him, trip over his gym shorts and fall.

67. Again on April 15, 2012, defendant Hall being the only officer assigned to D-house in violation of prison policies, came to plaintiff's cell early in the morning and required plaintiff to go into the utility chase corridor, this time to perform oral sex on defendant Hall. But instead of defendant Hall discharging sperm into plaintiff's mouth, defendant Hall urinated and plaintiff gagged and vomited onto the floor. Defendant Hall laughted at plaintiff.

68. On April 17, 2012, plaintiff was escorted to defendant Dorsey's mental health administrative office by officer Weems.

69. Plaintiff spoke with defendant Dorsey and explained he had been sexually assaulted again by defendant Hall over the weekend April 14 and 15, 2012. Plaintiff was upset, crying, and pleaded with defendant Dorsey to move him closer to the front of D-house, so defendant Hall would not have such easy access to him.

70. Defendant Dorsey retorted by shaking her finger at plaintiff stating, "Haven't you caused enough problems, you've got to stop this mess." Plaintiff remained in the same cell the entire time he was on administrative segregation.

71. Defendant Hall the only officer Assigned to D-house in violation of prison policies, on April 19, 2012, demanded that plaintiff help him in making some extra money.

72. Defendant Hall came up with A pornography picture boy website idea, where he hand picked young inmates that fit the criteria for the website, had pictures taken of them naked in plaintiff's cell to be sent to defendant Hall and uploaded to the site.

73. Plaintiff's cell door would remain open and plaintiff would walk freely up and down the range during defendant Hall's shift to be able to accomplish taking pictures of naked inmates defendant Hall sent to plaintiff's cell, even though plaintiff was still on segregation at the time.

74. These pictures were taken useing A Verizon LG phone, No. 404-272-3547 And A Samsung phone. The Verizon LG was provided through An Arrangement between defendant Hall And nurse Carter and delivered on may 11, 2012 to plaintiff to take pictures.

75. Defendant Hall had plaintiff convince inmates he Approached And hand picked, offering tobacco or money furnished by defendant Hall in exchange for having naked pictures of them. A few of these inmates Agreed to the offer, others were threatened by defendant Hall with A disciplinary report.

76. The Following is such a list of inmates: David Cassady #434646, Shane Pugliese #1205509, Erik Lord #1296867, Billy Blankenship #1237950, Gregory Waller #894681, Michael Upshaw #1184056, Lacy Smith #1000050262, Kevin Meeks #1000632636, and Robert Marchione #1000704912. This list by no means is exhaustive.

77. On April 24, 2012, plaintiff during inspection spoke with Defendant Humphrey and informed him plaintiff had been sexually assaulted again by Defendant Hall on April 14, and 15, 2012.

78. Defendant Humphrey laughed and stated " You have continued to tell this lie, and you like filing grievances and lawsuits against staff, thats why I locked you down and you will stay locked down". Defendant Humphrey walked away and did nothing.

79. Plaintiff specifically remembers Saturday, May 26, 2012 the weekend before Defendant Hall was removed from D-house and the events that transpired that morning. Defendant Hall was the only officer assigned to D-house in violation of prison policies, and required plaintiff to perform oral sex on him in the utility chase corridor to the right of plaintiff's segregation cell D-2-25.

80. Defendant Hall was slow to gain an erection and continued to force plaintiff to perform oral sodomy by grabbing the back of plaintiff's head and slaming it violently

down Defendant HALL's penis until it became erected, choking and gagging plaintiff in the process. Defendant HALL suddenly jerked his penis from plaintiff's mouth and slapped plaintiff with an open hand in the face, claiming plaintiff was scraping his teeth against Defendant HALL's penis and stated, "Now do it F__ken right", while thrusting his penis into plaintiff's mouth again. Plaintiff was overcome by fear. Defendant HALL did not stop his attack until he discharged in plaintiff's mouth approximately three minutes later.

81. Following Defendant HALL's attack, plaintiff's tooth became loose and he suffered general physical pain, bruising and swelling on his gums. As a result of his injury, plaintiff continued to bleed from the loose tooth for days afterwards, making it difficult or at times impossible to eat. Soon after, plaintiff had to have the tooth extracted.

82. Defendant HALL worked D-house for the last time on May 30, 2012.

83. On August 30, 2012, the cell phone plaintiff had been using to take nude pictures of young inmates and to receive nude pictures of Defendant HALL's sixteen year old step son, Tyler McCormick, to exploit on a picture boy website, was uncovered by prison Correctional Emergency Response Team, and turned over to Defendant Humphrey.

84. On August 31, 2012, Internal Affairs officer Patrick Wolfe and two other unidentified officers spoke with plaintiff

regarding the cell phone and Defendant Hall bringing tobacco into the prison. Defendant Hall was arrested that same day by a Butts County Sheriff For violation of oath of public officer.

85. Defendant Hall was Found guilty and sentenced to one year confinement, Four years probation.

86. Defendant Hall has a history of sexual misconduct including incident's outside the prison. One such incident in February 2013, after serving the above prison sentence. Defendant Hall was subsequently transferred to Lamar County Jail and charged with sexually explicit conduct of a minor 41 counts, Drugs not in original container 14 counts, and child molestation, All occurring some time in 2012.

87. Plaintiff is informed and believes, and on the basis of such information and belief alleges, the Georgia Crime Information Center, offender Criminal history record reflects Defendant Hall has an extensive arrest history;

4-5-09 / Georgia State Patrol, Cordele. Driving under the influence of Alcohol
    12 months probation, $946.00 Fine

9-6-11 / Barnsville Police Department, Deposit Account Fraud

    12 months probation

8-31-12 / Butts County Sheriff, Violation of oath of public office
Confinement 1 year, probation 4 years.

2-8-13 / Lamar County Sheriff, Sexually explicit conduct of A
minor, 41 Counts,
Drugs not in original Container,
14 Counts, Child molestation.
Confinement 8 years, 12 years probation

8-15-13 / Lamar County Sheriff, probation Violation

1-23-14 / Lamar County Sheriff, Child molestation,
Aggravated Child molestation.

88. Defendant Hall was employed Approximately Sixteen years As A Corrections officer At the Georgia Diagnostic And Classification Prison, and he continued to do so even After Defendant Humphrey and Defendant Eutsey, had personal Knowledge of Defendant Hall's extensive Arrest history.

89. Defendant Humphrey And Defendant Eutsey, Knew or should have Known by prison policies, Defendant Hall was placed on twelve months probation on two Separate Occasions. The First on April 5, 2009 For driving under the influence of Alcohol, and Again on September 6, 2011 For deposit Account Fraud.

90. Such Violations would have been Known IF both of these Defendant's Conducted proper yearly "employee performance management evaluations", As Department of Corrections policy

Dictates: "Accurate personnel records to document employee's positive and negative performances and for transmitting notification of any violation of law". (Standard operating procedures, IV014-0001)

91. Defendant Hall's personnel file reflects no such evaluations were conducted between July 23, 2009, when defendant Hall received a permanent salary reduction of 5% and suspension for his D.U.I. conviction, and September 4, 2012 when defendant Hall was terminated after his August 31, 2012 arrest, much less any random drug or alcohol screenings.

92. In fact, defendant Humphray and defendant Eutsey new late 2011, of defendant Hall's arrest on September 6, 2011 and subsequent sentence to twelve months probation.

93. Both defendant Humphray and Eutsey questioned defendant Hall regarding his September 6, 2011 arrest seeking verification of the status. Yet, nothing was noted in defendant Hall's personnel file as to any findings or disciplinary action taken to discipline defendant Hall for his second arrest and conviction according to Rosalind Williams, records room imaging clerk for the Department of Corrections.

94. Department of Corrections regulation (Violation of company rules - 0402) and (Standard operating procedures IV014-0001) mandated defendant Hall's termination in 2011.

95. Both defendant Humphray and Eutsey's willful blindness

and failure to control subordinates and to carry out prison policies, clearly understood the foreseeable consequences of their inactions.

96. Defendant Eutsey, as deputy warden of security, made daily rounds, visited each dorm when assigned as duty officer, conducted inspections and general site visits. In fact, defendant Eutsey's signature is found no less than twelve times between January 1, through July 20, 2012 in the D-house officers log book and staff visit log book.

97. Each and every time defendant Eutsey made his visits there was only one officer assigned to D-house, including days defendant Hall worked, which by prison policy is a mandatory two man post.

98. Defendant Eutsey knew this policy and failed to take corrective action after visiting D-house numerous times and witnessing the violation, thereby sanctioning a pattern or an unwritten custom of understaffing D-house and allowed the continuance of such custom which created the background and climate of an unreasonably and unsafe situation resulting in the severe and repetitive sexual assaults of the plaintiff.

99. On June 25, 2013, plaintiff received a letter from defendant Hall, wishing to make contact.

100. On July 5, 2013, plaintiff received a second letter from defendant Hall explaining his perplexing matter with the court.

- 21 -

101. On July 13, 2013, plaintiff received a third letter from defendant Hall, regarding his dream of a castle and of being with plaintiff.

102. On July 15, 2013, plaintiff received his fourth and final letter from defendant Hall, this letter was a detailed written account of the forced and repeated sexual assaults defendant Hall committed against plaintiff's will and of the sexually explicit nude pictures taken of inmates to be used on a picture boy website.

103. Each of the four letters were written in defendant Hall's distinctive hand writing. This was confirmed both by Internal Affairs officer Patrick Wolfe on October 31, 2013 and during defendant Hall's deposition taken on May 13, 2015, where he admits to writing each of the four letters.

104. Upon information and belief, defendant Hall was sentenced to twenty years, serve eight in prison for sexual exploitation of children on September 16 2014, and remains at the Georgia State Prison, in Reidsville Georgia to this date.

105. Plaintiff's mental state over this difficult issue has left him unbalanced. Plaintiff does not sleep well at night and sometimes not at all because of the oppressive, terrifying dreams related to the sexual assaults. These dreams cause plaintiff to wake up in a heated panic, sweating and heart racing out of control. When plaintiff can sleep, he sleeps under his bed in fear of another attack.

106. Each defendant in this case is individually responsible for plaintiff's health and safety. Each defendant had some controlling degree of authority within the Diagnostic and Classification Prison by and through their official positions. This influence, was sufficient enough at that time to enable any of the defendant's to take some sort of action to reasonably abate this issue.

## VII. Causes of Action
### Count I.

Plaintiff was subject to cruel and unusual punishment in violation of the Eighth Amendment to the Constitution.

107. Plaintiff realleges and incorporates by reference paragraphs 1 through 106 as they were stated fully herein.

108. Defendant Hall violated plaintiff's Eighth Amendment right to be free from cruel and unusual punishment by violently sexually assaulting plaintiff and repeatedly forcing plaintiff to perform oral and anul sex against his will during a two year period, amounted to an atypical and significant hardship and lacked penological justification to treat the plaintiff in the manner as described above.

## Count II.

Plaintiff was Denied Due Process, under The Fourteenth Amendment To The Constitution.

109. Plaintiff realleges and incorporates by reference paragraphs 1 through 106 As though they were stated Fully herein.

110. Defendant Humphrey and defendant Futsey, violated plaintiff's Fourteenth Amendment right to Due Process by depriving plaintiff of an opportunity to litigate his involuntary placement in Administrative Segregation by Failing to Abide by procedural requirements For placement in Segregation in Accordance with prison policies For two hundred and ten days, without prospect of immediate release in the near Future, Amounted to an Atypical and Significant hardship and lacked penological justification to treat the plaintiff in the manner As described Above.

## Count III.

Plaintiff was Subject To Retaliatory Treatment For Filing Section 1983 Claim And For Filing Grievances In Violation OF The First Amendment To The Constitution.

111. Plaintiff realleges and incorporates by reference paragraphs 1 through 106 As though they were stated Fully herein.

112. Defendant Humphrey violated plaintiff's First Amendment right to be free from retaliation by involuntarily placing plaintiff on administrative segregation for a period of two hundred and ten days for reporting systemic problems, sexual assaults, and filing grievances through the prison grievance system.

113. Each time plaintiff was sexually assaulted by Defendant Hall, plaintiff filed grievances and/or wrote letters to Defendant Humphrey regarding the assaults. Plaintiff suffered retaliation by Defendant Humphrey, this is evident by Defendant Humphrey's statement to plaintiff, "I locked you down to shut you up and to keep you hid from everyone. I'm tired of your letters where you claim one of my officers sexually assaulted you, your grievances and hearing your name". This statement is confirmed by a notation on February 2, 2012 in the D-house officers log book, "I/m Cassady is to remain locked down and to be treated like a diagnostic inmate until further notice . . . and moved to D-2-25 per Warden Humphrey".

114. A few months later, after plaintiff spoke with Defendant Humphrey during inspection regarding being sexually assaulted by Defendant Hall again. Defendant Humphrey verbally harassed plaintiff in retaliation for plaintiff's complaint, laughed and stated, "You have continued to tell this lie, and you like filing

grievances and lawsuits against staff, thats why
I locked you down and you will stay locked down."

115. These acts represent a pattern of events demonstrating
intentional retaliation against plaintiff by defendant
Humphrey for exercising his constitutional right to file
grievances and 1983 complaints with the court and have
caused plaintiff further mental anguish as a result.

## Count IV.

Breach Of Duty To Protect In Violation Of
The Fourteenth Amendment To The Constitution

116. Plaintiff realleges and incorporates by reference paragraphs
1 through 106 as they were stated fully herein.

117. Defendant Humphrey, defendant Eutsey, and defendant Dorsey,
violated plaintiff's Fourteenth Amendment, Breach of
Duty To Protect, by exercising deliberate indifference
to plaintiff's health and safety, by failing to protect
him from defendant Hall's repeated sexual assaults
even though each defendant had been informed prior to
such attacks.

118. Despite such knowledge, and without any uncertainty,
Defendant Humphrey ignored the risk, turning a blind
eye and deliberately moved plaintiff to a more

obscure And Vulnerable cell in D-house on involuntary Administrative Segregation For two hundred And ten Days, And leaving plaintiff there even After Defendant Humphrey was informed Again in April 2012 that Defendant Hall had Sexually Assaulted the plaintiff, Thereby, enabling Defendant Hall with impunity, to Continue to conceal Sexually Assaulting plaintiff within the unkempt And unattended Structure of the D-house administrative Segregation unit, which Amounted to An Atypical And Significant hardship And lacked penological justification to treat the plaintiff in the manner described Above.

119. Defendant Eutsey, exercised deliberate indifference to plaintiffs health and Safety by Failing to protect him From Defendant Hall's repeated Sexual Assaults even though he had been informed prior to Such Attacks.

120. Defendant Eutsey received repeated oral And written Complaints of defendant Hall's Sexual Assaults OF the plaintiff. Despite Such Knowledge, Failed to reasonably Abate plaintiffs Serious issue. Defendant Eutsey's deliberate indifference to plaintiffs health and Safety was Further demonstrated when he Spoke to plaintiff Stating, the issue was "Above his pay grade".

121. Defendant Dorsey exercised reckless disregard to plaintiffs health and Safety by refusing, For no

reason, to Authorize A cell change for plaintiff to move to an Available cell, when she knew there was Serious risk of plaintiff continually being Sexually Assaulted by defendant Hall due to oral And written Communication From the plaintiff informing her of such. Defendant Dorsey's deliberate indifference to plaintiff's health and safety was further demonstrated when she spoke to plaintiff in her Office in April 2012, After plaintiff had been Sexually Assaulted Again by defendant Hall, and defendant Dorsey shook her finger At plaintiff stating "Haven't you caused enough problems, you've got to stop this mess" And Failed to Follow professional mental health care standards and prison policies to intervene, take precautions to protect plaintiff and did nothing.

122. As A result of the deliberate indifference exercised by the Aforementioned defendants, plaintiff suffered Serious harm At the hands of defendant Hall. Plaintiff Sustained multiple physical injuries, including bleeding From Anus, exceedingly painful bowel movements, Severe pain, lose of A tooth, bruising And Swelling. plaintiff Also Continues to suffer extreme emotional distress From the incidents.


## Supplemental State-Law Claim

## Count I.

Plaintiff was Subject To Negligence, In Violation of GA. Code Ann./ Title 51, Tort.

123. Plaintiff realleges and incorporates by reference paragraphs 1 through 106 as they were stated fully herein.

124. Defendant Humphrey, violated plaintiff's rights under GA. Tort Laws, by intentionally failing to monitor subordinates, take action against reported illicit behavior, occasionally visited D-house, neglected to perform employee performance management evaluations, and control subordinates in accordance with Department of Corrections policies. Defendant Humphrey failed to take immediate action when he learned plaintiff was subject to substantial risk of imminent sexual assault and battery. Defendant Humphrey had an affirmative duty to intervene and to protect plaintiff from sexual assaults and battery by his subordinate defendant Hall. Under the theory of bystander liability, defendant Humphrey had a reasonable opportunity to prevent the harm, and chose not to act.

125. Defendant Rutsey, violated plaintiff's rights under GA. Tort Law, by sanctioning a pattern or custom of understaffing D-house, an habitual action he was quite aware of in violation of Department of Corrections policies, and allowed the continuance of such custom which created the background and climate

of an unreasonably and unsafe situation resulting
in repeated Sexual Assault and battery of plaintiff.
Defendant Eutsey failed to take immediate Action
when he learned plaintiff had been subject to
Sexual Assaults and battery by his Subordinate
Defendant Hall. Defendant Eutsey had an Affirmative
duty to intervene to protect the plaintiff. under
the theory of bystander liability, Defendant Eutsey
had a reasonable opportunity to prevent the harm
and chose not to Act.

126. Defendant Dorsey, violated plaintiff's rights under
6A. Tort Law, by deliberately failing to Act on
reasonable suspicion and letters from plaintiff that
he had been Subject to A Sexual Assault and battery.
Defendant Dorsey denied plaintiff's plea for A Cell
change, that could have Averted Any Continued Sexual
Assaults and battery At the hands of Defendant
Hall. But instead, Defendant Dorsey turned A blind eye.
Defendant Dorsey failed to investigate plaintiff's
Assertions of Sexual Assaults in Accordance with
Department of Corrections policies and State law.
In place of Such inquiry, Defendant Dorsey claimed
plaintiff was Suffering from A form of "Mental
psychosis" and dismissed the Allegations As Such,
and did nothing.

127. As A result of the Negligence exercised by the
Aforementioned Defendant's, plaintiff suffered Serious

harm At the hands of Defendant Hall. Plaintiff sustained multiple physical injuries, including bleeding from Anus, exceedingly painful bowel movements, severe pain in rectum, lose of A tooth, bruising and swelling, plaintiff Also continues to suffer extreme emotional distress from the incidents requiring both ongoing counseling and medications.

## VIII. Prayer For Relief:

WHEREFORE, Plaintiff respectfully prays that this Court:

A. Orders Defendant's to pay Compensatory and punitive damages, jointly, severally;

B. order Defendant's to pay reasonable Attorney Fees and Costs; And

C. Grant other just and equitable relief that this Honorable Court deems necessary.

Respectfully submitted, on this 28th Day of August 2015.

David D. Cassy / Plaintiff

Johnson State Prison
Post office Box 344
Wrightsville, Georgia 31096

·31·

## Verification

Pursuant to 28 U.S.C. / 1746, I declare and verify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed on this 28th day of August 2015.

David D. Cassy / Plaintiff